# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LYNETTA ANGELA DOYAL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION<br><br>No. 16-2684-JWL |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding the Administrative Law Judge's (ALJ) decision is not supported by the record evidence and is inadequately explained, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this decision.

**I.      Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, alleging disability beginning April 1, 2012. (R. 23, 196). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred in assessing Plaintiff's residual functional capacity (RFC), posed hypothetical questions which did not precisely fit Plaintiff's limitations and relied on erroneous responses thereto from the vocational expert (VE), and erred in determining the credibility of Plaintiff's allegations of symptoms resulting from her impairments.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). It provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

3

The Commissioner next evaluates steps four and five of the sequential process--determining whether, in light of the RFC assessed, claimant can perform her past relevant work; and whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the decision is not adequately explained or supported by the record evidence.

## II. Discussion

The ALJ determined in her step two analysis that Plaintiff has a rather extensive severe combination of impairments including left carpal tunnel syndrome, left shoulder rotator cuff impingement, sciatica, and diabetes. (R. 25). In her list of impairments that "are severe because they cause significant limitations in the claimant's ability to do basic work related activities," the ALJ listed both diabetes and impairments which can be caused by diabetes and which the medical records in this case suggest are caused by diabetes here--polyneuropathy, glaucoma, cataracts, and diabetic retinopathy. (R. 25). She determined at step three that Plaintiff's impairments do not meet or medically equal

the severity of any Listed impairment, and continued on to assess Plaintiff's RFC.  Id.
She found that Plaintiff has the RFC to "lift and carry 10 pounds with the left non-dominant arm;" that she must be allowed to "alternate between sitting and standing for a brief position change every 30 minutes;" cannot climb ropes, ladders, or scaffolds; and can only occasionally finger or feel and cannot reach overhead with the left hand and arm.  Id. at 25-26.  With regard to Plaintiff's eyes, the ALJ found that she cannot perform "work tasks requiring good depth perception and good bilateral vision," or "continuous good mono vision," and that she can perform jobs requiring "only frequent adequate vision."  Id. at 26.  Finally, the ALJ found that Plaintiff should avoid concentrated exposure to extreme cold, vibration, work hazards, and unprotected heights.  Id.

In her assessment, the ALJ noted EMG "findings consistent with bilateral median nerve entrapment at the wrist, and suggestive of carpal tunnel syndrome."  Id. at 27.  She noted that on a report dated July 18, 2013, Dr. Danushkodl[2] found "diabetic polyneuropathy, diabetic retinopathy with left eye legal blindness, left shoulder rotator cuff impingement, and bilateral carpal tunnel syndrome."  (R. 27) (citing Ex. 5F (R. 496-504)).  She summarized another report dated November 9, 2013from Central Medical Consultants, and noted "function in the right hand was normal," and "there is no evidence of end organ damage from diabetes or hypertension."  (R. 28).

---

[2]In her decision, the ALJ refers to this physician as "Dr. Danushkodl," but both Plaintiff and the Commissioner refer to her as "Dr. Danushkodi."  However, the letterhead of Dr. Danushkodl's report is repeatedly spelled with an "l," and his signature block contains the "l."  (R. 499-501).  The court refers to him as Dr. Danushkodl.

The ALJ found that Plaintiff's allegations of limitations resulting from her symptoms are not entirely credible for several reasons. She found that the "objective evidence does not support the degree of limitation alleged," because "examinations reveal normal range of motion and no pain on hip movement," she can still grip forty pounds with the left hand and "[f]unction in the right hand is normal." Id. She acknowledged that Plaintiff has "an excellent work history," but found that she was laid off from work and did not quit because of health complaints, she has been noncompliant with her insulin, there is no evidence of end organ damage, and she alleges taking an aerobics class but admits only a five-pound weight loss. Id. at 29.

The ALJ considered the opinion evidence in the record. She accorded minimal weight to the opinion of Plaintiff's nurse practitioner because she is not an acceptable medical source and because objective evidence does "not impose such strict postural limitations." Id. She accorded only partial weight to the opinions of the state agency physicians because they found Plaintiff capable of medium work with hand and vision limitations, but the medical evidence suggests she is capable of only light work. Id. at 29-30. Finally, she accorded significant weight to Dr. Danushkodl's opinion. Id. at 30.

### A. The Parties' Arguments

Plaintiff argues that the ALJ erred in failing to assess Plaintiff's RFC within any exertional category, in assessing no limitations for her right hand and no handling limitations for her left hand, and that by finding a need for only frequent adequate vision, the ALJ suggested that for one-third of the day or more Plaintiff need not be able to see

6

adequately in order to hold down a job as an arcade attendant, call out operator, or dowel inspector. (Pl. Br. 10). She argues that although the ALJ accorded significant weight to Dr. Danushkodl's opinion she did not account for all of the limitations Dr. Danushkodl found including standing and/or walking for only four to five hours, restricted fine motor activities with both hands, no driving due to poor vision, and lifting only five to ten pounds occasionally. Id. at 11. Plaintiff notes the extensive vision problems revealed in the medical records and argues that it was error to nonetheless assess the capacity for "frequent adequate vision." Id. at 12. She argues that the ALJ did not adequately explain why she found that function in Plaintiff's right hand was normal, and made no findings regarding Plaintiff's ability to handle. Id. at 14. She argues that Dr. Danushkodl's limitations on fine motor activities would have prohibited the frequent handling the DOT (Dictionary of Occupational Titles) reveals is required by the jobs of arcade attendant and dowel inspector. Id. at 17. Plaintiff argues that the ALJ erred in finding no evidence of end organ damage despite significant damage to Plaintiff's eye's caused by diabetes and resulting in significant vision problems including legal blindness in the left eye and reduced vision in the right eye. Id. at 20.

The Commissioner acknowledges in a footnote that the ALJ's RFC assessment does not reference light work, but argues that the omission was inadvertent because she referenced light work in her step five discussion and included a limitation to light work in her hypothetical question. (Comm'r Br. 2, n.2). She acknowledges that "it is somewhat inconsistent that [the ALJ] accorded 'significant weight' to . . . Dr. Danushkod[l]'s

7

opinion without discounting [his] conclusion that Plaintiff 'should be restricted with repetitive fine motor activities using both hands.'" Id. at 10 (quoting R. 501). She argues that this inconsistency is not critical since the ALJ found that Plaintiff is able to perform jobs that do not require repetitive fine motor activities. Id. She argues in another footnote that Dr. Danushkodl's opinion that Plaintiff can only lift five to ten pounds occasionally does not warrant remand because she would still be able to do the jobs as a call-out operator and a dowel inspector. Id. n.9. In another footnote, she recognizes that the ALJ discounted Plaintiff's credibility because of limited ongoing treatment for her vision problems, and admits that "it is not clear that this factor is supported by substantial evidence." Id. n.8. Later she argues, in yet another footnote, that Plaintiff's focus on reaching and handling is misplaced because such manipulations are "not indicative of a 'fine motor' activity that would be restricted based on Dr. Danushkod[l]'s opinion." Id. at 11, n.11. And she argues that "the ALJ's omitting a limitation on handling from the RFC was not in error, as such a limitation was not supported by substantial evidence." Id. at 12. The Commissioner argues that the vocational expert (VE) testified that an individual with only "frequent adequate vision" would be able to perform the jobs of arcade attendant, dowel inspector, and call-out operator," and that the VE testimony is substantial evidence supporting the ALJ's decision because the hypothetical presented reflected all of the RFC finding. Id. at 13. Moreover, the Commissioner argues, the VE explained that she interpreted the ALJ's limitation to "frequent adequate vision" to mean

8

"frequent near acuity," and there can be no inference that "frequent adequate vision" results in "no adequate vision" for one-third or more of a workday. (Comm'r Br. 14).

**B.    Analysis**

The parties' arguments do little more than ask the court to weigh the record evidence and determine, respectively, that Plaintiff is disabled or that she is not disabled. As the court noted above, it may not reweigh the evidence and substitute its judgment for that of the Commissioner. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d 1172; Bowling, 36 F.3d at 434. However, the reason the parties are left to seek the court's decision, appears to be that the rationale of the ALJ's decision is not clear. While it is clear she decided that Plaintiff is not disabled, her rationale in reaching that decision is unknown.

She found that Plaintiff can lift and carry ten pounds with her left hand, but did not specify frequently or occasionally. And she said nothing regarding limits on Plaintiff's right hand or the exertional level within which she assessed Plaintiff's capabilities. She noted EMG results consistent with bilateral median nerve entrapment and carpal tunnel syndrome, and that Dr. Danushkodl found bilateral carpal tunnel syndrome, but she assessed limitations only of the left hand. In summarizing the report of the consultative examination from Central Medical Consultants, she stated that function in the right hand was normal, but the report from Central Medical Consultants does not contain that statement, and she did not expressly note the examination findings upon which she relied to reach that conclusion. Dr. Danushkodl found that Plaintiff "should be restricted with repetitive fine motor activities using both hand" (R. 501) (emphasis added), but the ALJ

9

did not acknowledge this opinion, did not discuss it, did not assess limitations based thereon, and did not explain how it affected her conclusion that function in the right hand was normal. Dr. Danushkodl opined that Plaintiff "can lift up to 5-10 pounds occasionally." The ALJ did not acknowledge this opinion, discuss it, or assess limitations based thereon. And, she did not explain why she accorded significant weight to Dr. Danushkodl's opinion but did not assess limitations consistent with all of his opinions.

With regard to Plaintiff's eyes, the ALJ stated when summarizing the Central Medical Consultants' report that "there is no evidence of end organ damage from diabetes or hypertension," but the report does not make that statement. Moreover, the report states that visual acuity in the left eye "is 20/>200, uncorrectable with pinhole, with glasses." (R. 591). The report acknowledged "[r]etinal involvement with laser management," and Plaintiff's report of "glaucoma with a history of headaches." (R. 592). Moreover, the ALJ acknowledged that Dr. Danushkodl's report stated Plaintiff had diabetic retinopathy with left eye legal blindness. (R. 27). And, she recognized Plaintiff's eye treatment records showed, "uncontrolled diabetes," "glaucoma secondary to her diabetes," and "depth perception is limited from being monocular." (R. 29). But, she nonetheless relied on the "fact" of no evidence of end organ damage, and she did not explain how uncontrolled diabetes causing laser management of the eyes, blindness in one eye, glaucoma, and cataracts could be described as "no evidence of end organ damage."

"Frequent" as used in the context of Social Security disability practice "means occurring from one-third to two-thirds of the time." Soc. Sec. Ruling (SSR) 83-10, 1983

WL 31251, *6 (Jan. 1, 1983). Therefore, as Plaintiff argues, the ALJ's finding that Plaintiff is limited to "only frequent adequate vision" implies that the jobs of which Plaintiff is allegedly capable do not require "adequate" vision at least one-third of the time. The Commissioner's argument that the VE explained that he interpreted "frequent adequate vision" to mean "frequent near acuity" does not resolve the ambiguity created by the ALJ's RFC assessment of limitations from good depth perception, good bilateral vision, or continuous good mono vision, and to "only frequent adequate vision." (R. 26).

Here is the colloquy between the ALJ and the VE in this regard at the hearing:

Q  Okay. And then, if the individual -- this is really bad. I don't know how to quantify it. Could not continuously have good vision, other eye, which means that there'd be limited vision, even mono-vision would be reduced, oh let's say, to -- that there would only be, like, let's say frequent adequate vision so that it was reduced somewhat for the blurred vision that might need to clear or might improve, but let's just say it's only frequent. Would that affect the jobs you identified?

A  No.

Q  Okay. So that wouldn't affect the first ones or the call-out operator?

A  Correct, and I'm interpreting that as frequent near acuity.

Q  Yeah. Okay, that sounds good. I just couldn't figure out how to say it. Okay. And then, of course, if the vision was reduced down to only occasional near acuity, then would those jobs still be available?

A  No.

(R. 74-75).

This colloquy reveals that the ALJ said she did not know how to quantify the limitation, that she felt the term used, "frequent adequate vision," was "really bad," but

11

she chose that term to describe limited vision which was reduced because of blurred vision that might need to clear or to improve. The VE explained that she interpreted the ALJ's term and description to mean "frequent near acuity," and the ALJ responded that she just couldn't figure out how to say it but that the VE's term "sounds good," suggesting that she agreed with the VE's term, that it was a better term than the one she chose, and that it accurately described the limitation the ALJ described. However, in her decision the ALJ once again chose to use her own term rather than the technical term used by the VE, and she did not discuss her use of the term, describe the meaning she intended, or explain why she did not use the technical term. In other words, she did nothing to resolve the ambiguity created by her use of the term "only frequent adequate vision."

Finally, the court notes that an ALJ may not merely summarize the record and then choose to rely on certain "facts" from that evidence which support her view of the case when there is other evidence of contrary "facts." Rather, she is required to provide a narrative discussion which cites specific medical facts and nonmedical evidence to describe how the evidence supports her conclusions, discuss how the claimant is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2017). The discussion must include an explanation how any <u>ambiguities and material inconsistencies in the evidence were considered and resolved</u>. <u>Id.</u> If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion. <u>Id.</u> at 150.

As described above, the ALJ in this case did not provide an adequate narrative discussion explaining the evidence she relied upon and the evidence she rejected, and why, and she did not properly resolve the ambiguities and material inconsistencies in this case record. Remand is necessary for the Commissioner to provide an adequate explanation consistent with the law and with the record evidence. The court does not intend to imply by this opinion that on remand the Commissioner must find Plaintiff disabled. But, she must explain how the evidence supports her decision, how she resolved the inconsistencies and ambiguities, and how she distinguished or discounted the evidence contrary to her decision.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent herewith.

Dated this 11th day of October 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**